THE PEOPLE ex rel. The Chicago Bar Association, Relator, vs. SAMUEL J. HACHTMAN, Respondent.

*Opinion filed October 22, 1932—Rehearing denied Dec. 7, 1932.*

JOHN L. FOGLE, (STEPHEN LOVE, of counsel,) for relator.

JAMES J. BARBOUR, and LEONARD I. WISSMAN, for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

Respondent is, by information filed in this court on leave, charged with unprofessional conduct in dealing with his client. A commissioner appointed by this court to take evidence and report his findings has recommended his disbarment.

The information sets out that respondent on the 14th of December, 1922, was admitted to practice law in this State; that during March, 1929, one John W. Wraith and wife entered into a contract to sell certain real estate to one Leta Chilivitis and her husband, residing in the city of Chicago, and that Wraith employed respondent to attend to the details of closing the transaction and collecting the sum of $2500, cash payment on the purchase price of the property. By the terms of the contract Leta Chilivitis was to pay

$13,500 for the property—$2500 in cash, a first mortgage for $8000 and a second mortgage for $3000, the latter to be paid off at the rate of $50 per month. Shortly after the execution of this contract Chilivitis deposited with respondent the sum of $2000, to be held by him until the deal was closed and then to be delivered to Wraith as part of the purchase price. The information charges that instead of turning over the $2000 to Wraith when the deal was closed he converted the same to his own use, and that it was only after proceedings were started before the bar association and respondent was arrested on the complaint of Wraith's representative that settlement with Wraith was made by him, and then but a portion was paid over in cash, the greater part being settled by Wraith taking respondent's notes, with differing due dates.

There is no substantial dispute in the evidence. Respondent admits he received the $2000 under a contract signed by Leta and William Chilivitis and John W. Wraith. The agreement, called in this record an "escrow agreement," provided that the sum of $2000 and the mortgages and notes for the purchase price be held by respondent pending "the delivery of good and merchantable title * * * to be approved by Harry A. Kerins." Kerins was attorney for Leta Chilivitis in this transaction. The evidence is that in accordance with the agreement of the parties the Chicago Title and Trust Company issued a letter of opinion of title wherein was noted the existence of a recorded lease to one Pelinka, containing an option to purchase. This lease was dated in 1925 and was by its terms to expire March 9, 1930. Pelinka had gone into bankruptcy and a receiver of his estate had been appointed, and, so far as the evidence shows, the lease had been forfeited for non-performance on the part of Pelinka long before the transaction of these parties. The evidence is that Kerins, on behalf of the Chilivitises, waived this objection to title, and on his advice Mrs. Chilivitis paid the sum of $2000 to respondent, the deed was

delivered and the grantees went into possession. This was in April, 1929.

In February, 1930, Wraith, who was then living in California, wrote to his nephew, Raymond L. Andruss, and asked him to procure from respondent the notes and mortgages left with him and the $2000, less proper charges for his services and expenses. Andruss testified that he made frequent calls on respondent for settlement, which respondent promised to make, at one time stating that it would be necessary for him to sell some stocks to make settlement. On March 15, 1930, pursuant to the urging of Andruss, respondent wrote to Wraith, enclosing a statement showing that there was due Wraith the sum of $1875.75 and stating that a check was attached. Andruss, to whom this letter was given, called attention to the fact that check was not attached and asked respondent for it. Respondent replied that he did not have it, whereupon, at Andruss' request, he erased the portion of the letter stating that check was attached and inserted in its stead the statement that a check would be forwarded. In this letter he stated that owing to the condition of the record it had been impossible to close the deal earlier. Andruss testified that, notwithstanding repeated requests and calls by him after that time, the money was not forthcoming, and that in the latter part of April, 1930, Andruss made complaint to the relator bar association. Respondent was notified of the complaint and requested to attend a hearing of the grievance committee. He, however, did not respond to or appear before the committee.

At the October, 1930, term of this court leave was granted relator to file this information. A hearing was had during the summer of 1931, and on July 1, 1931, settlement was made, whereby respondent paid to Kerins, then representing Wraith, the sum of $700 in cash and gave him seventeen notes for $50 each and one for $500, payable on various dates, beginning August 1, 1931. In the meantime the Chilivitises had defaulted on their contract to purchase

and the property was re-conveyed to Wraith. About the time of respondent's settlement with Wraith, Wraith issued a letter in which he stated that the transaction was satisfactorily closed and endorsing respondent's conduct in the matter, fully releasing and discharging him of any obligation to Wraith. The commissioner found, and we think properly, that this letter was probably given as a condition or consideration of final settlement, as neither Wraith's previous conduct nor the facts shown in this record could otherwise reasonably account for a letter of that character from Wraith.

The principal contention of respondent is that because of the existence of the Pelinka lease, he, as escrowee of the $2000, was not required to, and could not with safety, pay over the money until after release of any claim which the receiver of Pelinka had in the Pelinka lease and option. It is undisputed in this record that the lease had long since been broken and abandoned by Pelinka and that neither the receiver nor anyone else had any interest in the premises under it. That lease and option by their terms expired on March 9, 1930, and respondent, as a lawyer, must have known that objection to them, when waived by Kerins as counsel for the vendees, afforded no excuse for further retention of the trust fund. The deed had passed, the Chilivitises were satisfied with their title, and the lease and option could be said to afford, at best, but a shadow of an excuse for not paying over the $2000 placed in the hands of respondent.

It is also evident from this record that instead of preserving these funds as a trust fund respondent mingled them with his own private funds and converted them to his own use. This he does not deny. Canon 11 of the Professional Ethics as adopted by the American and Illinois State Bar Associations, points out that "the money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and, except with

client's knowledge and consent, should not be commingled with his private property or be used by him." Even though it could be said that there was a technical reason for respondent's retaining the $2000 as escrowee, surely he can have no advantage of such a position after his letter of March 15, 1930, in which he states that a check will follow, yet not until over a year and three months thereafter is settlement with his client made. That he had converted this trust fund to his own use is shown by the fact that the settlement, when made, was but part in cash, the major portion being in the form of notes.

The record in this case clearly establishes the misappropriation of these funds and the conversion of them to the use of respondent and fully justifies the recommendation of the commissioner that respondent be disbarred. That recommendation is accordingly approved.

The rule will be made absolute and the name of respondent stricken from the roll of attorneys.

*Rule made absolute.*