(No. 40612.—

*In re* IRVING D. BLOOM, Attorney, Respondent.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae*.

MILTON K. JOSEPH, of Chicago, for respondent.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The Committee on Grievances of the Chicago Bar Association recommended that the respondent, Irving D. Bloom, be disbarred. Subsequently the Board of Managers of that association, acting as Commissioners of this court, approved the report of the Committee on Grievances but amended its recommendation to a suspension from the practice of law for one year. Respondent seeks a review of this recommendation.

There is no substantial dispute as to the facts which appear from the testimony of the respondent and by stipulation. No witnesses other than respondent testified at the hearing. Respondent, Irving D. Bloom, was admitted to practice in the State of Illinois in the year 1934, and had known Rabbi Berl Aronovitz for many years. Respondent rendered various services to him, placing loans and doing other things without fee. On September 19, 1960, Aronovitz gave respondent $2,250 to be loaned to Hubert Thomas, to be repaid in monthly installments, plus interest at 7%. Respondent was to collect the payments due from Thomas and remit them to Aronovitz without charge. On October 5, 1960, a similar arrangement was made for a loan to Julius Simmons of $3,500.

Respondent made the loans, and it was established, by uncontradicted evidence, his collections and remittances on these loans were as follows:

| Year | Simmons Collections | Thomas Collections | Remitted to Aronovitz | Deficit or Excess of Remittances under or over collections | |
|------|---------------------|--------------------|-----------------------|----------------------------------------------------------|---|
| 1960 | $ 900.00 | $150.00 | $ 976.00 | — | $ 74.00 |
| 1961 | 3,125.00 | 348.00 | 1,312.00 | — | 2,161.00 |
| 1962 | | 60.00 | 860.00 | + | 800.00 |
| 1963 | | | 350.00 | + | 350.00 |
| 1966 | | | 800.00 | + | 800.00 |
| Totals | $4,025.00 | $558.00 | $4,298.00 | — | $ 285.00 |

This table of payments and remittances shows that in 1960, respondent failed to remit to Aronovitz the sum of $74; in the year of 1961, he failed to remit $2,161; that from 1962 through 1966, respondent paid Aronovitz $1,950 in excess of his collections during those years; that in 1966, a final payment of $800 was accepted by Aronovitz in full settlement of respondent's obligations to him. It appears that Aronovitz took over the collection of the Thomas loan.

There is some question whether or not a portion of the moneys collected by the respondent could or should have been retained by him for commissions. Simmons repaid more than the amount borrowed plus 7% interest. There is no clear evidence of any agreement between Aronovitz and the respondent concerning the disposition of these excess payments.

The final settlement between Aronovitz and the respondent was not made until after the complaint was filed in this proceeding. It was not made earlier in spite of several requests for payment by Aronovitz and by attorney Max Kopstein on his behalf, and the respondent's appearance before the Committee on Inquiry three or four times over a period of four or five months.

Respondent had at all times, in a joint bank account

with his wife, sufficient funds to pay to Aronovitz all moneys in full collected for him on these two loans. The respondent did not keep formal books of account but did keep an accurate record of all remittances made to him on envelopes which he placed in a file with the payee's name thereon, as well as keeping a record of the payments on the file cover.

Respondent contends that there is no satisfactory proof of fraudulent or dishonest motives, but only that respondent's bookkeeping methods were admittedly poor.

Upon the entire record, however, it clearly appears that respondent received moneys belonging to his client, commingled them with his own, and failed to remit them to his client for a long period of time without any legitimate reason. In such practice he was guilty of unethical conduct which tends to bring the bar into disrepute.

Canon 11 of the Chicago and Illinois State Bar Associations Canons of Ethics states: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

In *People ex rel. Chicago Bar Ass'n* v. *Hachtman,* 350 Ill. 326, 329, this court disapproved the commingling of clients' funds by an attorney, basing its opinion on Canon 11 in the following language:

"It is also evident from this record that instead of preserving these funds as a trust fund respondent mingled them with his own private funds and converted them to his own use. This he does not deny. * * * Even though it could be said that there was a technical reason for respondent's retaining the $2000 as escrowee, surely he can have no advantage of such a position after his letter of March 15, 1930, in which he states that a check will follow, yet not until over a year and three months thereafter is settlement with his client made."

In *In re Lingle,* 27 Ill.2d 459, 468, this court commented upon loose, careless, unorthodox methods of handling funds entrusted to a lawyer, saying:

"Any conduct of an attorney which necessarily tends to bring discredit upon the profession is an abuse of the privilege secured to him by his license, * * * and we find there has been satisfactory proof of such conduct on the part of the respondent in this case. The loose, careless and dilatory practices followed by respondent in matters entrusted to him, his failure to follow court orders, and his unorthodox methods of handling and accounting for funds entrusted to him, all were such as to bring the legal profession, the courts and the administration of justice into disrepute. The commissioners, on the record made, concluded that the total effect of all the proved charges was to demonstrate that respondent is altogether unfit for the practice of law and recommended his disbarment. We think the commissioners were warranted in so finding and their report and recommendation are approved."

We are cognizant of the fact that it appears that Aronovitz may have acquiesced in these loose practices for a considerable period of time, but the fact remains that respondent did not finally account for the converted funds until after Aronovitz had made frequent demands, hired an attorney, and made complaint to the Committee on Inquiry. The client's lack of diligence cannot excuse the breach of the lawyer's duty.

Nor is direct evidence of dishonest motives necessary to justify the imposition of discipline. As the court said in *In re Abbamonto,* 19 Ill.2d 93, 98: "The record does not contain direct evidence as to whether such failure was the result of dishonest motives, or whether it was caused by carelessness or financial difficulties, but in either case there was an inexcusable violation of the obligations of an attorney. It is vital to the well-being of society that an attorney, who is an officer of the court and a part of our

judicial system, should maintain the most scrupulous care in conducting his professional and business affairs. (*In re Clark,* 8 Ill.2d 314.)"

We think that the record fully supports the conclusion that respondent was guilty of unethical conduct that requires discipline.

We are also mindful of the fact that respondent has had a long and heretofore unblemished career as a lawyer, that he appears to have co-operated with the Committee, and to have made a complete settlement with his client. These facts have been weighed in considering the severity of the discipline. We are, therefore, of the opinion that the respondent should be suspended from the practice of law for one year, and he is so suspended.

*Respondent suspended.*