(No. 52143.

*In re* RICHARD LEON CLAYTER, Attorney, Respondent.

*Opinion filed January 23, 1980.*

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins, of Collins & Amos, of Chicago, for respondent.

MR. JUSTICE RYAN delivered the opinion of the court:

This case presents this court with an opportunity to admonish the bar of this State that it is absolutely impermissible for an attorney to commingle his funds with those

of his client or with money he holds as a fiduciary. Unfortunately, many attorneys are either unaware of, or indifferent to, this proscription.

In this disciplinary proceeding the Administrator of the Attorney Registration and Disciplinary Commission filed a one-count complaint charging the respondent, Richard Leon Clayter, with commingling and conversion of earnest money that had been deposited with him by the parties to a contract for the sale of real estate. A hearing panel of the Commission found that the conduct of the respondent constituted a wrongful conversion of funds entrusted to him and a wrongful commingling of funds with his own. It recommended that the respondent be suspended from the practice of law for a period of three months. The Review Board affirmed the recommendation of the hearing panel.

The respondent was licensed to practice law in Illinois in 1957. He had, prior to the incident in question, represented Myrna Gulley on various matters and on February 10, 1976, the respondent represented her in the sale of her house to Mr. and Mrs. Sinclair McGaughy. On that date a contract for the sale of the house was executed. The purchaser paid $1,000 as earnest money, which was deposited with and held by the respondent, as provided in the contract. The buyers took possession of the house about March 6, 1976, and were to pay rent in the amount of $270 per month on a month-to-month basis.

On February 11, 1976, the respondent deposited the earnest money check in an account in the Southside Bank and Trust Company in Chicago. This account was in the name of Noel Realty. It was a business account which had been opened for use in the operation of an apartment complex in which the respondent was a partner. The authorized signatures for this account were the respondent's and his son's. This was neither a clients' trust account nor an escrow account.

The respondent contends that he withdrew $450 from that account on February 20, 1976, and $450 on

February 27, 1976, and that he put this $900 in cash, along with another $100, in an envelope which he placed in a safe in his house. According to the respondent, the cash remained in the safe until he deposited it in a savings account in the Harris Trust and Savings Bank in Chicago, along with some other money, on March 17, 1977. This savings account was in the name of the respondent, but he testified that he kept clients' funds in this account and that he had written "clients trust account" on the face of the passbook in 1978. On January 14, 1978, the respondent filed a complaint for interpleader in the circuit court of Cook County, alleging that he could not make a proper determination between Gulley and the McGaughys as to who should receive the money in dispute, and paid into court the $1,000 earnest money, plus $109 as interest. Respondent contends that he withdrew the $1,000 from the savings account in the Harris Trust and Savings Bank.

Following the execution of the contract to purchase, the seller's (Gulley's) interest in the property was foreclosed and sold by the sheriff of Cook County to the mortgagee. Gulley was therefore unable to deliver title pursuant to the contract. The McGaughys, on June 4, 1976, declared the contract cancelled and demanded the return of the $1,000 earnest money. However, the respondent's client, Gulley, contended that the $1,000 also constituted a security deposit for the payment of rent and instructed the respondent not to return the earnest money to the purchaser until the respective claims of the parties to the contract had been determined.

The evidence clearly establishes that the respondent had commingled the earnest money that had been deposited with him with his personal funds when he deposited the $1,000 in the Noel Realty account in the Southside Bank and Trust Company on February 11, 1976. Also, when the $1,000 was allegedly deposited in the savings account in the Harris Trust and Savings Bank on March 17, 1977, that account was in respondent's

name and had not been designated as a trust or escrow account. The commingling of funds and depositing clients' funds or other money held by an attorney for another in an account standing in the attorney's name alone endangers the security of the interests of those to whom the money belongs. Commingling of funds has been the first step in a large number of cases which this court has considered involving wrongful conversion of funds by attorneys. Also, when funds belonging to another are deposited in an attorney's personal account, there is the danger of the conversion of these funds by operation of law; that is, in case of the death or insolvency of an attorney, these funds could well become assets of his estate, leaving the rightful owner with only a claim of a creditor against the attorney's estate. For these reasons, it is essential that such money be held in such a manner that there can be no doubt that the attorney is holding it only for another and that the money does not belong to him personally.

This court has consistently condemned the commingling of funds. (See *People ex rel. Chicago Bar Association v. Hachtman* (1932), 350 Ill. 326, 329-30; *In re Lingle* (1963), 27 Ill. 2d 459, 463-64; *In re Bloom* (1968), 39 Ill. 2d 250, 253; *In re Sherman* (1975), 60 Ill. 2d 590.) These are but a few of the many cases in which this court has been called upon to specifically consider the propriety of an attorney commingling money belonging to others with his personal funds.

The respondent here contends that he withdrew $900 from the Noel Realty account and placed this amount, along with another $100, in an envelope and placed it in his safe at home, thus holding the earnest money segregated in this manner. In *In re Lingle* this court, in addition to discussing the ethics of commingling, also considered the propriety of an attorney segregating a client's money in this manner, and holding it in a safety deposit box. The court stated:

"And while technically, perhaps, there was no

commingling of funds when respondent put his client's money in the safety deposit box, we are of the belief that such a covert method of handling a client's funds is highly unprofessional and one which can only create suspicion and harmful inference. A lawyer's clients, the courts and public alike, have a vital interest in his integrity and are entitled to require that he shun even the appearance of any fraudulent design or purpose. [Citation.] " *In re Lingle* (1963), 27 Ill. 2d 459, 463-64.

The hearing panel and the Review Board found not only that the respondent had wrongfully commingled the earnest money with his own funds, but also found that he had wrongfully converted the money. This conclusion was based upon the fact that the balance in the Noel Realty account, following the deposit of the earnest money, on several occasions dropped below $1,000. The respondent contends, however, that the balance in the account never dropped below $1,000 prior to February 27, 1976, when he contends he had withdrawn $900 from the account and deposited this amount in cash, along with another $100, in an envelope which he placed in his safe at home. The findings of the hearing panel specifically state, however, that it did not believe the respondent for the following reasons: The withdrawals were to cash, they were made on two different dates approximately one week apart, and the total of the two withdrawals did not amount to $1,000. Although the ultimate responsibility for determining and imposing discipline rests with this court, consideration will be given to the findings of the hearing panel and the Review Board. (*In re Wyatt* (1972), 53 Ill. 2d 44, 45.) (For a discussion concerning the role of the judiciary in supervising attorney discipline, see Seidenfeld, *Professional Responsibility Before Reviewing Courts,* 25 De Paul L. Rev. 264, 282-83 n.87 (1976); Swett, *Illinois Attorney Discipline,* 26 De Paul L. Rev. 325, 325-26, 331-35 (1977).) We find

clear and convincing evidence in the record to support the findings leading to the conclusion that the respondent commingled the earnest money with his personal funds and converted it to his personal use.

While there has been both a technical commingling and a technical conversion of the funds, the record is devoid of any evidence of dishonest motive. The respondent had been instructed by his client, who also claimed an interest in the earnest money, not to return it to the McGaughys until the respective interests in the earnest money of the parties to the contract could be determined. Although an immediate commencement of the interpleader action would have been preferable, the attorney's failure to file the complaint as soon as the conflicting claims to the money became apparent was not the result of any dishonest motive. While this court has held that it is not necessary that there be evidence of dishonest motives to justify the imposition of discipline (*In re Bloom* (1968), 39 Ill. 2d 250, 254; *In re Abbamonto* (1960), 19 Ill. 2d 93, 98), we find it appropriate to consider this factor in determining the nature and severity of the sanction to be imposed. This court considered facts similar to those present in this case in *In re Sherman* (1975), 60 Ill. 2d 590. In that case this court censured the respondent. Although we recognize that each disciplinary case is unique, where facts are strikingly similar to those in another case, a degree of uniformity in the discipline imposed should be sought. We therefore conclude that censure is the appropriate sanction in this case. This conclusion is warranted by a record which discloses no evidence of dishonest motive; that the respondent had practiced law for almost 20 years with no other complaints of ethical infractions; that he has an outstanding record of involvement in community service programs; and that there was testimony as to his good reputation by character witnesses of undeniable integrity.

*Respondent censured.*