(No. 52755.—

*In re* FRANCIS EDWARD SCHLAX, Attorney, Respondent.

*Opinion filed May 22, 1980.*

Mary M. Conrad and Philip Schickedanz, of Chicago, for the Administrator of the Attorney Registration Disciplinary Commission.

Philip H. Corboy and Nicholas J. Motherway, of Chicago, for respondent.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In a two-count complaint filed on March 10, 1978, and amended on October 19, 1978, the Administrator of the Attorney Registration and Disciplinary Commission charged respondent, Francis Edward Schlax, who was admitted to practice law in Illinois on November 19, 1953, with conduct which brought the legal profession into disrepute. In count I respondent was charged with wrongful commingling and conversion of a client's funds, and in count II with dishonesty and misrepresentation before the Inquiry Board. A panel of the Hearing Board recommended that with respect to the conduct charged in count I respondent be censured, but found that no dis-

ciplinary action was warranted for the misconduct alleged in count II. The Administrator filed exceptions, and the Review Board affirmed the recommendation of the hearing panel. We allowed the Administrator's petition for leave to file exceptions to the report and recommendation of the Review Board and permitted the filing of briefs and oral argument. 73 Ill. 2d R. 753.

The testimony shows that respondent became acquainted with James E. Suerth in 1971 when, following the recommendation of a mutual acquaintance in Alcoholics Anonymous, Suerth asked respondent to represent him in divorce proceedings with his first wife. When the divorce litigation was concluded, respondent did not bill Suerth for his services, apparently because he thought Suerth was unable to pay a fee at that time. Suerth, a painter by trade, testified that he subsequently performed decorating and painting services for respondent in payment of the fee. Respondent and Suerth developed an amicable relationship. Respondent advised Suerth concerning both legal and personal difficulties, and occasionally invited him to his home. Suerth testified: "I would have given him [respondent] my right arm."

In the ensuing years respondent performed a variety of legal tasks for Suerth, including preparation of wills and income tax returns, and representation in traffic cases. Respondent also undertook legal representation of several members of Suerth's family and of the family of his present wife. The testimony is in dispute concerning whether Suerth requested those services or accepted responsibility to pay for them. Respondent testified before the hearing panel about the variety and extent of this work. He rendered no bills for services and received no payment. His friendship with Suerth continued until the occurrence of the events which resulted in the complaint to the disciplinary commission.

In December 1975 respondent undertook representa-

tion of Suerth in connection with the estate of his deceased aunt and obtained from the estate, for Suerth, an advancement of some $20,000 to $25,000. The testimony shows that Suerth spent the money in a very short period of time. Thereafter, the executor of the estate, seeking to make a final accounting and unable to locate Suerth, who had changed addresses, forwarded to respondent a check for $95,540.57 payable to Suerth, in payment of the balance of his inheritance.

Respondent communicated with Suerth and met with him. Suerth stated to respondent that he wanted him to be paid his fees "off the top." Although the testimony is in dispute as to who initially made the suggestion, it was agreed that respondent would issue a check for $25,000 to Suerth, drawn on his office account, and the check for $95,540.57 would be endorsed over to respondent, who would deposit it in his account. Thereafter respondent, on demand, would issue checks to Suerth until the sum due was paid. The testimony shows that this arrangement was undertaken to protect Suerth from the "spendthrift" tendencies demonstrated by his handling of the earlier advancement. In describing their agreement before the hearing panel, Suerth stated that it was "a personal gesture."

Exhibits in evidence show that, after depositing the money in his office account, respondent drew several checks on the account for which Suerth's funds must necessarily have been utilized. Payees on the checks included, among others, the American Express Company, individuals who had made personal loans to respondent, and the Internal Revenue Service.

The testimony shows that Suerth, over a period of seven months, requested additional sums and received checks from respondent. In four instances checks issued to Suerth were returned because of insufficient funds. Thereafter, Suerth requested payment in full from

respondent, who presented an accounting of sums held on Suerth's behalf and a bill in the amount of $10,200 for services rendered, which figure Suerth disputed. Respondent proposed to Suerth, by letter, that in lieu of the attorney fee he be permitted to repay the sum of $21,146.61 remaining due to Suerth in twenty $1,000 monthly installments, and a final payment of $1,146.61. After consultation with his wife, Suerth declined the offer. Suerth subsequently consulted attorney Kevin Gillogley to determine what steps might be taken to obtain payment of the moneys held by respondent. After several unsuccessful attempts by Gillogley either to obtain repayment or have the disputed sums placed in a separate escrow account, Gillogley advised Suerth to contact the Attorney Registration and Disciplinary Commission.

Before the Inquiry Board, respondent stated that he had made full restitution of all sums due by issuing one personal check and endorsing over to Suerth three checks which he had received for legal fees. In fact, only three checks were given to Suerth and only one had been received by respondent in payment of a fee; one was a personal check for $10,829.10 and another was a draft from a loan company, endorsed over to Suerth. These alleged misrepresentations were the basis for the second count of the Administrator's complaint charging unprofessional and unethical conduct involving dishonesty and misrepresentation before the Inquiry Board.

In recommending that respondent be censured, the hearing panel found that the $95,540.57 check was accepted "as a personal favor between friends" not within the scope of an attorney-client relationship, and therefore no commingling had occurred which would warrant discipline. The hearing panel concluded, however, that respondent could be disciplined for his conduct "outside his professional capacity," in failing, once a dispute developed, either to promptly return the funds to Suerth

or deposit them in a segregated account. The panel concluded that the divergence in testimony before the Inquiry Board and the actual facts regarding the reimbursement of sums to Suerth evidenced no motive of dishonesty or misrepresentation for which discipline was warranted. The Review Board affirmed.

The Administrator argues that commingling and conversion of funds entrusted to an attorney's care warrant suspension from the practice of law, and that censure is not an appropriate sanction in this case. While recognizing that circumstances exist which might be considered in mitigation in determining the sanction to be imposed, the Administrator argues that respondent nevertheless was guilty of commingling and conversion of funds. Citing *In re Brody* (1976), 65 Ill. 2d 152, he recommends a period of suspension of at least one year. Respondent, while admitting that his conduct constituted "technical" commingling and conversion warranting censure (*In re Sherman* (1975), 60 Ill. 2d 590), argues that under the circumstances shown more severe discipline is not justified.

As the court said in *In re Sherman* (1975), 60 Ill. 2d 590, 593, "Consideration will be given to the reports and recommendations of the Hearing Board and the Review Board, but 'the ultimate responsibility for determining and imposing discipline rests with this court.' (*In re Wyatt,* 53 Ill. 2d 44, 45.)" That respondent commingled and at least temporarily misappropriated funds entrusted to him is beyond dispute. In determining the appropriate sanction to be imposed, mitigating circumstances must be given consideration, and the testimony of three judges, two former presidents of the Chicago Bar Association, and a number of other attorneys shows that, with the exception of this occurrence, respondent's professional conduct has been beyond reproach. Other testimony shows a substantial contribution of time and effort in the

assistance of individuals who had sought assistance from Alcoholics Anonymous.

As the court noted in *In re Costigan* (1976), 63 Ill. 2d 230, 237, "Determination of the precise discipline to be imposed upon an erring attorney is rarely easy. It is not easy here." Upon examination of the authorities cited by the respondent and the Administrator, we conclude that factually this case resembles *In re Saladino* (1978), 71 Ill. 2d 263, and *In re Melin* (1951), 410 Ill. 332. It is distinguishable from *In re Sherman* (1975), 60 Ill. 2d 590, upon which respondent relies. We hold that an appropriate sanction to be imposed in this case is that respondent be suspended from the practice of law for a period of three months.

*Respondent suspended.*