(No. 63282.

*In re* HOWARD SOLOMON, Attorney, Respondent.

*Opinion filed September 21, 1987.—Rehearing denied December 1, 1987.*

CUNNINGHAM, J., took no part.

Deborah M. Kennedy, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Bruce S. Feldacker, of St. Louis, Missouri, for respondent.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (Administrator) filed a two-count complaint against respondent, Howard Solomon, who was

licensed to practice law on October 18, 1965. Count I charged the respondent with commingling, conversion, failure to render an accounting, and failure to deliver over promptly funds belonging to a client with respect to Annalee Grunert (Grunert), all in violation of Rule 9—102 of the Code of Professional Responsibility. (107 Ill. 2d Rules 9—102(a), (c)(3), (c)(4).) Count II contained the identical allegations with respect to client Maurice Cohen (Cohen). Subsequently, the Administrator filed an amended complaint, realleging counts I and II and adding count III, which alleged conversion and failure to account with respect to client Edward Lowinsky (Lowinsky). Respondent answered, admitting commingling regarding Grunert, but denying all other allegations in the amended complaint.

The Hearing Board recommended that respondent be suspended from the practice of law for nine months. Both parties filed exceptions with the Review Board, the Administrator seeking disbarment and respondent seeking dismissal of the complaint. The Review Board agreed with the Hearing Board's recommendations, and this court allowed the Administrator's petition for leave to file exceptions to the report and recommendation of Review Board. (94 Ill. 2d R. 753(e)(6).) The sole issue for review is the proper sanction to be imposed upon respondent.

The facts as to clients Grunert and Cohen are not in dispute. Respondent represented Grunert, a client since 1968, in a lawsuit seeking readmission of Grunert's daughter after her expulsion, for disciplinary reasons, from Lincoln-Way Community High School District 210 (Lincoln-Way) and to expunge the expulsion from the daughter's record. Respondent and Grunert entered into a fee agreement under which respondent was to be compensated at a rate of $70 per hour for office time and $80 per hour for time spent in court. Fees were to be

billed monthly. Pursuant to this agreement, Grunert advanced respondent approximately $7,000.

Respondent then engaged a second attorney, Marilyn Longwell, to assist him on the Lincoln-Way matter. Ultimately, a settlement was entered into which provided, *inter alia,* for payment of $12,500 "to cover such items as psychological testing costs, [c]ourt costs and attorney's fees." Lincoln-Way's check was made payable to Grunert, to respondent's law firm, Solomon and Solomon, and to Kerr and Longwell, attorney Longwell's law firm.

Respondent obtained the necessary endorsements and deposited the settlement check in Solomon and Solomon's business account. At Grunert's request, respondent paid her $3,500 from the settlement check. Respondent retained the remainder, which he testified was due him as fees and expenses for the lawsuit and as payment for an outstanding prior balance on Grunert's account of approximately $1,500. Respondent admitted in his answer that at various times the balance of the firm's account fell below $7,500. This was corroborated by copies of bank statements introduced into evidence by the Administrator.

Respondent admitted during direct and cross-examination that he made no formal accounting to Grunert. In fact, he did not have an internal accounting on this matter at the time he retained the balance of the Lincoln-Way settlement check. Respondent, however, testified that he attempted to make an informal, oral accounting as was his practice with previous matters he had handled for Grunert. He indicated that she refused his offer.

Respondent represented Cohen in several actions, all relating to property sold by Cohen and reclaimed after the buyer defaulted. A number of fires had rendered the property uninhabitable. Respondent was retained to recover the proceeds due under several insurance policies. Because the property was uninhabitable, the city of Chicago filed a complaint for a decree of demolition. The

court ordered demolition but also ordered that all outstanding insurance proceeds be paid to the clerk of the circuit court of Cook County. A total of $4,440.31 in insurance proceeds was deposited with the clerk. Subsequently, the court ordered this sum remitted to Cohen. A check was issued payable to Cohen, his wife, and respondent's law firm. Respondent again obtained the necessary endorsements and either respondent or his father, a partner in the firm of Solomon and Solomon, deposited the check in the firm's business account. Respondent retained the entire $4,440.31 as compensation for fees and expenses. He admitted in his answer that at various times the balance of the firm's account fell below $4,440, and bank statements admitted into evidence before the Commission confirmed his admission.

Respondent testified that he made no accounting to Cohen. He further testified that, at the time the Cohen settlement check was deposited, he did not know exactly how much money was due the firm in fees and expenses. He testified that he relied on a statement of his now-deceased father that the firm's fees and expenses exceeded the amount of the Cohen settlement. He also stated that he later gave this information to Cohen's son-in-law.

The record reveals disputed facts as to client Lowinsky. Lowinsky had purchased a condominium. When the seller refused possession, Lowinsky retained respondent to file a lawsuit. At respondent's request, Lowinsky advanced $500 for costs. Respondent filed the requested lawsuit and deducted a filing fee of $79 from the advance, which he had deposited into the firm's business account. The balance of the condominium advance was not used on that lawsuit. The balance in firm's account fell below $500 on several occasions.

Respondent testified that he performed other legal services for Lowinsky during this time. He revised Lowinsky's will; he performed estate-planning services; and

he resolved a dispute between Lowinsky and his publisher, Columbia University Press. With the exception of $250, which respondent charged Lowinsky for the will and which Lowinsky paid, he did not charge Lowinsky for this additional work. It was stipulated before the Hearing Board that the work on the will, estate planning, and the publisher matters would exceed $671, which was the balance remaining from the condominium advance plus the $250 Lowinsky paid for the revision of his will.

Respondent testified that the fee for the will revision was $500. He also testified that Lowinksy twice authorized him to use the balance of the condominium advance as payment for other legal services, expressly asking respondent to apply part of the advance to the $500 fee for the will revision. Lowinsky, however, testified that he gave no such authorization. The Hearing Board found Lowinsky's testimony the more credible.

Testimony elicited from respondent on cross-examination indicated his position with regard to rendering accounts and recovering his fees and expenses. Regarding client Grunert, he gave the following testimony:

"Q. You believe that you could take what you allege was your fee from the proceeds of the settlement check prior to providing Miss Grunert with an accounting, didn't you?

A. No, I don't believe that.

&#42; &#42; &#42;

Q. In fact, you believe you had no duty to account because you claim the proceeds were your fee, isn't that right, Mr. Solomon?

&#42; &#42; &#42;

A. The answer is absolutely not."

Regarding client Cohen, respondent gave the following testimony:

"Q. You do believe that you have a duty to account to a client for client's funds, even though the client does not request an accounting, don't you?

A. Yes, I believe that.

\* \* \*

Q. But apparently, you believed that you could use the proceeds of the $4,440 check prior to accounting to the Cohens, didn't you?

\* \* \*

A. The proceeds of that check had been used way prior to the receipt of the check.

Q. So you believed you could reimburse yourself for the costs spent, is that what you're saying?

A. We have an obligation to reimburse ourselves. \* \* \*

Q. And you believed you could use the proceeds of that check in that manner prior to accounting to the Cohen's, isn't that right?

\* \* \*

A. My answer is, I believe that we are obligated to reimburse ourselves for expenses and the fees."

The Hearing Board, in recommending a nine-month suspension, noted that respondent admitted commingling as to Grunert. As to Cohen, the Board found, by clear and convincing evidence, that respondent had commingled Cohen's funds with his own. The Board further found that he failed to render an accounting as charged in each count of the complaint. The Board found that respondent had converted funds entrusted to him by Lowinsky by expending them without authorization. As to the allegations of failure to deliver funds promptly and conversion regarding Grunert and Cohen, the Board found:

"that [r]espondent did not owe funds to Grunert or Cohen and thus did not violate the Code [of Professional Responsibility] by failing to promptly pay those funds. It is not inconsistent with that conclusion to also conclude that even though it ultimately was determined that [r]espondent did not owe any monies to Grunert and Cohen, he still converted funds. We believe that there is a distinction between failure to pay an amount when there has not been a determination that an amount is owed, and using for personal purposes funds in [r]espondent's posses-

sion in which the client has a legitimate interest before it is determined whether any part of those funds in fact belong to the client."

The Board also expressed concern that, "both from [r]espondent's dealings with his clients and the arguments advanced by him here to excuse his conduct, particularly with respect to accounting to his clients for funds in his possession, that [r]espondent does not clearly understand the nature of the relationship between attorney and client."

The Review Board, in affirming the Hearing Board, concluded that "[n]otwithstanding the fact that [r]espondent contended that all or some of the funds held by him constituted fees due to him, [r]espondent failed to properly advise his clients of his contention and unilaterally, without any agreement or understanding with his clients, treated the deposits as his own funds and utilized them for his own purposes. Such conduct constitutes a violation of the concept that the holding of such funds by the attorney creates a trust relationship and the failure to account for such funds and to disburse them as directed by the client constitutes violations of the Code of Professional Responsibility."

Rule 9—102 of the Code of Professional Responsibility provides in pertinent part:

"(a) All funds of clients paid to a lawyer or law firm, including funds belonging in part to a client and in part presently or potentially to the lawyer or law firm, shall be deposited in one or more separate identifiable trust accounts in a bank or savings and loan association maintained in the State in which the law office is situated.

\* \* \*

(c) A lawyer shall

\* \* \*

(3) maintain complete records of all funds, securities, and other properties of a client coming into the

possession of the lawyer and render appropriate accounts to his client regarding them; and

(4) promptly pay or deliver to the client, as requested by the client, the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." 107 Ill. 2d Rules 9—102(a), (c)(3), (c)(4).

The Administrator argues that respondent's misconduct warrants disbarment because he has disregarded, intentionally and systematically, the repeated admonition of this court that commingling and conversion will not be tolerated. The Administrator maintains that "respondent has engaged in a pattern of mishandling and converting *** funds" sufficient to demonstrate "bad motive," "a fundamental disregard for the principles required of an attorney," and "his inability to conform his conduct to that required of an [o]fficer of the court." Arguing that "[t]he record is devoid of any mitigation or evidence which suggests that [r]espondent will adhere to normal professional standards in his treatment of future clients[,]" the Administrator concludes that disbarment is the only appropriate sanction.

Respondent, on the other hand, argues that censure is the appropriate sanction where, as here, none of the complaining clients lost funds to which they were entitled; the Hearing Board found, as fact, that the actions complained of were not the result of "dishonest intent"; and his past record shows no evidence of any professional impropriety. Respondent further contends that censure is the correct sanction because he has admitted error in failing to segregate client funds in a trust account and to render a formal written accounting prior to taking payment for fees and costs due and owing. He also stresses that he cooperated fully and frankly throughout the proceedings before the Commission. Finally, he points out that this court has imposed the ultimate sanction of disbarment only where

commingling and conversion amounted to fraud or could be properly characterized as "extremely aggravated intentional misconduct."

We agree with respondent that his conduct does not warrant disbarment. Disbarment is the proper sanction where an attorney has engaged in such misconduct as forging negotiable instruments belonging to clients, defrauding clients, and failing to make restitution or making restitution only after disciplinary proceedings were commenced. (*In re Smith* (1979), 75 Ill. 2d 134, 141-42; *In re Stillo* (1977), 68 Ill. 2d 49, 53-54.) However, we cannot agree that respondent's conduct warrants a sanction no more severe than censure.

Respondent, in urging censure, relies on cases in which this court has censured attorneys for "technical commingling and conversion," balancing the technical violation of Rule 9—102 against such mitigating factors as absence of dishonest motive, no ultimate loss of funds belonging to clients, and no history of professional misconduct. *In re Young* (1986), 111 Ill. 2d 98, 104-05; *In re Enstrom* (1984), 104 Ill. 2d 410, 418-19; *In re Clayter* (1980), 78 Ill. 2d 276, 283.

We believe respondent's reliance on these cases is misplaced. In each of these cases, there were additional factors which, while not excusing "technical commingling and conversion," warranted a sanction less stringent than suspension. In *In re Young*, an attorney commingled and converted funds which were to be used to clear a title defect on property involved in a real estate transaction. The commingling and conversion occurred during a period in which "there was a *bona fide* title problem with respect to his client's property which justified his retention of the money." (*In re Young* (1986), 111 Ill. 2d 98, 104.) Further, the attorney in *In re Young* was no longer engaged in the active practice of law at the time this court was considering his case. In *In re Enstrom*, the conversion at issue oc-

curred by operation of law when the Internal Revenue Service seized Enstrom's personal account because of unpaid withholding taxes charged to a law firm for which he once worked. That firm dissolved after one of its partners, W. Jason Mitan, was disbarred. (*In re Mitan* (1979), 75 Ill. 2d 118.) This court also noted that Enstrom was impeded in his handling of the matter at issue because his partner at the time disappeared, taking the applicable file, including Enstrom's notes. Finally, in *In re Clayter*, an attorney technically commingled and converted funds with respect to $1,000 in earnest money deposited with him and which he continued to hold because he "had been instructed by his client, who also claimed an interest in the earnest money, not to return it *** until the respective interests in the earnest money *** could be determined." *In re Clayter* (1980), 78 Ill. 2d 276, 283.

Respondent's case is not analogous to the foregoing cases. No unusual circumstances are apparent, nor can respondent point to any which would bring his case within the ambit of those cited. To the contrary, respondent's own testimony established a conscious disregard of his obligations under Rule 9—102, obligations which this court has held apply to each member of the bar without exception. (*In re Elias* (1986), 114 Ill. 2d 321, 332-33.) Here, respondent testified that he knew he had a duty to render a formal accounting to his clients even though clients may not make such a request. He further testified that he knew his duty to account was independent of any claim to all or part of the funds as payment for fees or expenses. Respondent's testimony clearly established that he knew he must account for all settlement proceeds prior to seeking payment for fees and expenses properly due him. As respondent's above-quoted testimony makes clear, he also knew that the duty to account was not waived where, as here, the attorney has a valid claim on the entirety of the settlement proceeds. Despite these clear acknowledge-

ments of his obligations under Rule 9—102, respondent admitted that he did not attempt to render a formal accounting to Grunert, Cohen, and Lowinsky. In this regard, respondent's "offer" to render an oral accounting to Grunert is of no significance. Moreover, respondent made repeated reference in his testimony to an attorney's obligation to reimburse himself for costs and fees. As to Grunert, Cohen, and Lowinsky, respondent allowed his obligations to himself to take precedence over his obligations to his clients. This is patently unacceptable. Without doubt, respondent's testimony amply supports the Hearing Board's conclusion that he "does not clearly understand the nature of the relationship between attorney and client."

Respondent's repeated disregard of his duties under Rule 9—102 along with his acknowledgement of commingling and conversion in his pleadings before the Commission fully supports the sanction imposed by the Hearing Board and concurred in by the Review Board. Therefore, for the reasons stated herein, respondent is suspended from the practice of law for a period of nine months.

*Respondent suspended.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.