(No. 57378.—

*In re* PHILIP HAROLD BIZAR, Attorney, Respondent.

*Opinion filed June 9, 1983.—Rehearing
denied September 30, 1983.*

Charles S. Morgan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Warren Lupel and Philip H. Bizar, *pro se,* of Chicago, for respondent.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On May 18, 1981, the Administrator of the Attorney Registration and Disciplinary Commission filed a two-count complaint against respondent, Philip Harold Bizar, who was licensed to practice law in Illinois on November 29,

1966, charging him with "the failure to account for the proceeds of a settlement, the failure to preserve the identity of funds and property of a client in violation of Canon 9, DR 9—102, of the Illinois Code of Professional Responsibility (1970), the wrongful conversion and commingling of clients' funds, [and] overreaching," tending to bring the legal profession into disrepute. A panel of the Hearing Board recommended that respondent be suspended from the practice of law for a period of 18 months and until further order of this court. Both respondent and the Administrator filed exceptions to the report of the Hearing Board. The Review Board found that the Administrator had proved by clear and convincing evidence that respondent had converted and commingled a client's funds and recommended that respondent be suspended for one year.

The testimony shows that respondent was retained by Robert and Annette Scheid to represent them in a claim for personal injuries arising from an occurrence in Florida in 1978. After receiving an initial settlement offer of $750, which the Scheids rejected, respondent negotiated a settlement in the amount of $7,500. Under his agreement with the Scheids, respondent was entitled to a fee of $2,500. In April 1979 the Scheids executed releases and returned them to the respondent. Respondent then received a draft from an insurance carrier in the full amount of the settlement and deposited it in a "special account." The "special account" was in the name of the firm in which respondent had been a partner. Although the firm had been dissolved, respondent was using the account to close out some matters. Although the Scheids did not sign the settlement draft, endorsements purporting to be theirs appeared on it.

There was conflicting testimony concerning whether the Scheids had authorized respondent to endorse the draft in their behalf, and also as to subsequent events. Respondent testified that he informed the Scheids in early April 1979 that the settlement check had been received, and that Mr.

Scheid agreed to lend respondent $3,000 of the $5,000 to which the Scheids were entitled. Mr. Scheid testified that he was not informed as to receipt of the check until approximately June 1, 1979, and that he agreed to accept less than the full $5,000 immediately because respondent told him that he was having financial difficulties and did not have the funds to pay him the full amount.

On June 6, 1979, respondent forwarded $2,000 of the settlement to the Scheids. On July 25, 1979, respondent executed a demand note for $3,200 payable to the Scheids. This note was not paid, and a second demand note in the amount of $4,400 was executed by respondent on April 14, 1980. The Scheids began receiving $200 monthly payments on the note from respondent, but became dissatisfied with the arrangement. They retained another attorney for the purpose of collecting the unpaid portion of the settlement. On April 1, 1981, a judgment was entered in favor of the Scheids and against respondent in the amount of $4,220.62.

Bank records in evidence show that in early April 1979 the balance in respondent's "special account" was $35.50, that the $7,500 settlement draft was deposited into that account on April 11, 1979, and that four checks totaling $2,800 were written on the account during the remainder of the month. Checks written on the account by respondent over the next two months were payable to "Cash," Illinois Bell Telephone Company, Commonwealth Edison, respondent's secretary, and respondent himself.

Subsequent to the filing of the disciplinary proceeding, respondent and the Scheids appear to have reached an agreement for payment. As of December 8, 1981, the Scheids released the judgment obtained against respondent.

In this court respondent filed exceptions, and after leave given (87 Ill. 2d R. 753(e)), the Administrator also filed exceptions to the report of the Review Board. Respondent contends that the testimony of Robert Scheid

was insufficient to prove the misconduct alleged. He argues that it is apparent from its findings that the Hearing Board did not find Mr. Scheid's testimony to be credible on a number of points. An examination of the findings, however, shows this contention to be without merit. Respondent argues that when two equally credible witnesses (Mr. Scheid and the respondent) have given clearly inconsistent testimony, the party with the burden of proof (the Administrator) has not proved that issue by a preponderance of the evidence. We do not agree. The record contains clear and convincing evidence of respondent's misconduct.

Respondent contends that the Hearing Board erred in its refusal to permit respondent's secretary, Ms. Hendricks, to testify to one side of a telephone conversation between Mr. Scheid and respondent. The record shows that the witness could not testify as to an exact time or date of the conversation or who initiated the call. Under these circumstances, we cannot agree with respondent that testimony relating to what the witness heard one party say over the telephone to another, whose identity must be presumed, was competent. Furthermore, respondent made no offer of proof, and the record fails to reflect the content of the proffered testimony.

Respondent contends next that the Administrator failed to prove, by clear and convincing evidence, that respondent commingled his own funds with those of his client in violation of DR 9—102 of the Illinois Code of Professional Responsibility, and argues that the evidence of the conduct of the complainants and respondent shows a debtor-creditor relationship. Assuming that, as testified by respondent, complainants agreed to lend respondent $3,000 of the settlement proceeds, the deposit of the entire settlement check in respondent's account, from which respondent wrote checks to pay various personal expenses, and other checks made out to "Cash," nevertheless violated DR 9—102(a), which provided:

"All funds of clients paid to a lawyer or law firm shall

be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein ***."

While the rule provides for limited exceptions, it is clear that respondent used his "special account," into which the settlement draft was deposited, as an operating account, and his clients' funds should not have been deposited therein. (See *In re Kramer* (1982), 92 Ill. 2d 305, 310; *In re Clayter* (1980), 78 Ill. 2d 276, 280-81.) The record supports the finding of the Review Board that it is incredible that the unpaid portion of the settlement was a loan.

Respondent argues that since complainants have now received all the funds to which they were entitled, suspension is unwarranted. Respondent contends that censure is sufficient to protect the integrity of our profession and is in the best interest of the public at large. We cannot agree. It is the risk of the loss of the funds while they are in the attorney's possession, and not only their actual loss, which the rule is designed to eliminate. (*In re Saladino* (1978), 71 Ill. 2d 263, 276.) While in the respondent's checking account which he used for his own expenses, the funds were subject to the claims of creditors and could have been lost to the Scheids permanently.

Absent mitigating factors, conversion of a client's funds may constitute grounds for disbarment. (*In re Stillo* (1977), 68 Ill. 2d 49.) In view of the fact that this appears to be respondent's first violation of the disciplinary rules, that respondent appears to enjoy a good reputation in the community, and that his clients received all the money to which they were entitled, with interest, albeit more than 2½ years after the date on which it should have been received, suspension appears to be an appropriate sanction.

Respondent is, accordingly, suspended for a period of one year.

*Respondent suspended.*