(No. 59672.

*In re* MARVIN GREEN, Attorney, Respondent.

*Opinion filed October 19, 1984.*

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Marvin Green, of Chicago, *pro se.*

JUSTICE WARD delivered the opinion of the court:

Marvin Green, the respondent, was admitted to the bar of Illinois in 1950. Following the filing of a complaint against the respondent by the Administrator of the Attorney Registration and Disciplinary Commission, the hearing panel found that he had engaged in professional misconduct and recommended his suspension from the

practice of law for a period of six months. The Review Board affirmed the hearing panel's finding of misconduct, but a majority of the Board recommended that Green simply be censured. Three members of the Board recommended his suspension from practice for six months.

In February 1982, the Administrator filed a single-count complaint charging the respondent, *inter alia*, with fraud, conduct resulting in prejudice to a client, and failure to preserve the identity of trust funds.

Early in 1975 the respondent was retained by the Brant Construction Company (Brant) of Griffith, Indiana, to represent it in its claims for between $600,000 and $700,000 for construction work performed. The respondent, between March 1975 and October 1977, received from Brant total fees of $106,400 and in addition reimbursement for expenses of $6,591. The respondent had filed a suit in the United States District Court in behalf of Brant and had used the services of a court reporter, Charles McCorkle, Jr.

In December 1976, respondent sent Brant an itemized statement totaling $32,340.73. The statement indicated that the respondent had paid McCorkle $4,095.95 as deposition expenses. In fact McCorkle had not been paid by the respondent. The itemized statement had also noted that Brant was being given a credit of $4,000, and this amount was deducted from the subtotal of $36,340.73. William J. Brant, Jr., the president of Brant, testified that he knew nothing about the credit and assumed that it was a credit from an earlier statement. Brant testified that the first time he knew of an unpaid court reporter's bill was when he was sued by McCorkle for unpaid court-reporting fees. The suit was referred to other counsel for handling, and in October 1979 judgment was entered for McCorkle against Brant for $2,505.90 plus costs. The judgment was settled by the

payment by Brant of $2,544.54 to McCorkle in satisfaction of the judgment. Brant paid an additional $3,300 in the McCorkle litigation for attorney fees.

The respondent had paid McCorkle $1,000 in May 1977 and $1,000 at the end of December 1977. These were the only payments he had made to McCorkle.

On July 30, 1979, Brant filed a complaint against the respondent with the disciplinary commission. At the time of the hearing before the Hearing Board, the respondent had not reimbursed Brant for the monies it paid McCorkle. After the hearing, the respondent paid Brant $2,544.54, which respondent says he obtained through a loan.

Steven Maish, who was house counsel for Brant, testified that after the suit had been brought against Brant by McCorkle he talked with the respondent, who admitted owing the money to McCorkle and pleaded that his records were in disarray. He told Maish later that he would try to make restitution.

The respondent testified that he had severe personal and financial problems during the period involved. He said that, at the time of the December 1976 billing of Brant, a new billing procedure, initiated by an attorney associated with the respondent, had been used by his office. Under the changed procedure, the respondent had not approved the statement as to form or content but had merely examined the overall amount of the bill. He said that he did not actually see the final draft of the statement before it was sent to Brant, and had he seen it and known that McCorkle was unpaid, he would not have permitted the statement as it was worded to have been sent. He said he never knew the actual cost of the court reporter's services in the litigation he brought for Brant. It appears that there were a number of court reporters, and he said that he gave Brant a credit of $4,000 because the respondent was concerned by the

number of reporters serving in the suit he brought for Brant and attempted to balance the cost of their services against the result which might be obtained for Brant. The respondent said, too, that the deposition expenses were, by agreement, to have been divided between him and the attorney for Brant's debtor. However, when the settlement between the debtor and Brant was effected, the debtor's attorney refused to pay half of the expenses. He said that no payment was ever made by the debtor's attorney, and he felt that a sort of rough justice had been done Brant by giving the $4,000 credit.

The findings of the Hearing Board included a finding that the "failure to properly identify client funds and to account for the same was not the result of fraud, deceit, misrepresentation, nor was it conduct involving moral turpitude ***. [T]he conduct was the result of a failure to properly preserve the identity of client funds which resulted in prejudice and damage to the client that arose out of and during the course of a professional relationship."

The panel noted, too, that the respondent and the lawyers he brought in to assist in representing Brant in the litigation did a "first rate job." It was "complex, bitterly contested litigation," the panel said. The panel noted, too, that the respondent could not avoid his obligation to insure that all of his client's interests were handled responsibly in this major litigation.

Involved is Rule 9—102(a) of the Code of Professional Responsibility, which in part provides:

"(a) Other than advances for costs and expenses, all funds of clients, paid to a lawyer *** shall be deposited in one or more separate identifiable trust bank accounts ***." 87 Ill. 2d R. 9-102(a).

Rule 7—101(a)(3) of the Code of Professional Responsibility, which is also concerned, provides:

"(a) A lawyer shall not intentionally ***

(3) prejudice or damage his client during the course of the professional relationship ***."

· The respondent, as has been stated, represents himself in this proceeding before us. He raises numerous points in his brief, but we consider that only two require discussion here.

It is not disputed that the respondent deposited the checks he received from Brant following his December 1976 billing in his general office account and that as of June 14, 1977, and on numerous occasions thereafter the balance in the respondent's office account was overdrawn. The Administrator says that a conversion of Brant's funds was thus clearly established. The respondent contends, however, that Brant voluntarily relinquished to the respondent all title and control over the $4,095.95 covering McCorkle's services and that thus there was no conversion by the respondent of any money belonging to Brant. This, however, is a disciplinary proceeding in which the professional conduct of an attorney is being ethically judged; it is not a civil proceeding in which the issues are simply the ownership of funds and the time of passage of title. In any event, if it was the intention of Brant to pay the $4,095.95 directly to the respondent, that intention existed because of the misrepresentation to Brant by the respondent that McCorkle had been paid by him for his services. Under the circumstances, the respondent was not entitled to the use of the money. In contemplation of professional obligation he held the funds in trust for McCorkle. He should have segregated them instead of placing them in his general office account.

The respondent contends that the hearing panel and the Review Board erred in concluding that there was prejudice or damage to his client during the course of their relationship. He says that it is error to say that there was a commingling of funds prior to October 1977,

when the respondent says the client-attorney relationship was terminated. That contention cannot be supported. It is clear that the respondent billed the client on December 10, 1976, for $32,340.73, indicating in his statement that he had paid McCorkle $4,095.95. Brant made payment in installments. The respondent received and deposited $5,340.73 on February 3, 1977, $5,000 on March 9, 1977, and the balance on May 2, 1977. Thus, by May 2, 1977, the respondent had received the $4,095.95 from Brant which related to the court-reporting expenses. It is clear that the prejudice and damage to his client occurred during their professional relationship. The funds received from the December 1976 statement had been, to the extent of $4,095.95, impressed with a trust because of the respondent's misstatement to Brant that he had paid the court reporter. The prejudice and damage to Brant, who had paid the respondent over $100,000 in fees, was real. Brant paid $4,095.95 to the respondent in response to the respondent's misstatement that McCorkle's bill had been paid. In addition, Brant paid $2,544.54 to McCorkle to satisfy the judgment gotten against Brant in October 1979. There was further damage to the client when Brant was required to pay $3,300 in attorney fees because of the McCorkle suit. The amount of restitution the respondent paid to Brant was $2,544.54. This was paid some five years after the commingling and the loss to Brant was, as we pointed out, substantially greater.

The purpose of a disciplinary proceeding is to safeguard the public, protect the administration of justice from reproach, and maintain the integrity of the profession. (*In re Harris* (1982), 93 Ill. 2d 285, 292.) We consider that the finding of the hearing panel that the respondent did not properly preserve the identity of client funds, which resulted in prejudice and damage to Brant arising out of and during the course of the professional

relationship, was supported by clear and convincing evidence.

We consider that the appropriate sanction here is suspension from the practice of law for three months.

*Respondent suspended.*